IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **RICHARD M.**[1], <br><br>    Plaintiff, <br><br>    v. <br><br>**MARTIN O'MALLEY**, Commissioner of Social Security, <br><br>    Defendant. | Case No. 6:22-cv-1709-SI <br><br> **OPINION AND ORDER** |

Betsey R. Shepherd, 425 Riverwalk Manor Drive, Dallas, GA 30132. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Shata L. Stucky, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       Plaintiff Richard M. seeks review of the final decision of the Commissioner of the Social

Security Administration (Commissioner) denying Plaintiff's application for disability insurance

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

benefits (DIB). Plaintiff also applied for supplemental security income (SSI) benefits, but the ALJ issued a partially favorable decision, finding Plaintiff disabled after his date last insured and thus eligible for SSI as of that date but not eligible for DIB. Plaintiff argues that the ALJ erred in determining Plaintiff's onset date of disability and that Plaintiff thus is eligible for DIB. For the following reasons, the Court affirms the Commissioner's decision.

## STANDARD OF REVIEW

The decision of the administrative law judge (ALJ) is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for DIB and SSI benefits on October 16, 2019, alleging a disability onset date of June 30, 2017. AR 204, 208. Plaintiff's date of birth is December 28, 1964, and he was 52 years old as of the alleged disability onset date. AR 65. The agency denied Plaintiff's claims both initially and upon reconsideration, and Plaintiff requested a hearing. AR 74, 111, 133. Due to the COVID-19 pandemic, the ALJ held a telephonic hearing on June 21, 2021. AR 19, 37, 167. Plaintiff attended the hearing, represented by counsel. AR 35. The ALJ issued a partially favorable decision, approving Plaintiff's claim for SSI benefits, but denying Plaintiff's claim for DIB. AR 15-30. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied. AR 1. The ALJ's decision thus became the final decision of the Commissioner and Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g).

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Keyser*, 648 F.3d at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the analysis continues beyond step three, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC).

The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

**C. The ALJ's Decision**

As a preliminary matter for Plaintiff's DIB claim, the ALJ found that Plaintiff met the insurance requirements of the Social Security Act through December 31, 2018. AR 21. Therefore, Plaintiff needed to establish disability—for a period of twelve months or longer—on or before that date to establish his DIB claim. The ALJ then proceeded to the sequential analysis.

At step one of the analysis the ALJ determined that Plaintiff had not engaged in substantial gainful activity from the alleged disability onset date of June 30, 2017, through his date last insured of December 31, 2018 (the "relevant period"). *Id*. At step two, the ALJ found that Plaintiff had the following medically severe impairments: peripheral neuropathy, diabetes,

and obesity. *Id*. At step three, the ALJ determined that none of these impairments met or equaled the severity of any impairment listed in 20 C.F.R part 404, subpart P, Appendix 1. AR 22. Next, the ALJ determined Plaintiff's RFC and found that he could perform light work as defined in 20 C.F.R §§ 404.1567(b), 416.967(b), but with the following additional limitations:

> [H]e can occasionally operate foot controls and hand controls bilaterally. He can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. [He] can frequently, but not constantly, handle and finger bilaterally. He can tolerate occasional exposure to extreme environmental heat and cold. He can tolerate occasional exposure to workplace vibration, and to workplace hazards such as unprotected heights and exposed, moving machinery.

*Id.*

Based on these limitations, at step four, the ALJ found that Plaintiff had been unable to perform any past relevant work since his alleged disability onset date of June 30, 2017. The ALJ then noted that on December 27, 2019, Plaintiff's age category changed from that of an individual closely approaching advanced age to that of an individual of advanced age. Before that date, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. AR 28. Therefore, the ALJ concluded that Plaintiff was not disabled before December 27, 2019, but became disabled on that date. AR 29. Consequently, Plaintiff was not under a disability at any time through his date last insured, December 31, 2018, and was therefore not eligible for DIB but was eligible for SSI as of December 27, 2019. *Id.*

## DISCUSSION

Plaintiff argues the ALJ erred by (1) improperly rejecting Plaintiff's subjective symptom testimony; (2) improperly rejecting the lay witness testimony of Plaintiff's girlfriend; and (3) providing an invalid hypothetical to the vocational expert (VE).

### A. Subjective Symptom Testimony

#### 1. Legal Standards

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the

PAGE 7 – OPINION AND ORDER

claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2. Analysis

The ALJ discounted Plaintiff's symptom testimony, making the boilerplate statement that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision." AR 23-24. The ALJ specifically stated that the objective medical evidence did not support Plaintiff's claimed limitations. Although the ALJ did not specifically enumerate other reasons for discounting Plaintiff's testimony, the ALJ's discussion of Plaintiff's testimony included Plaintiff's activities of daily living and a history of routine conservative treatment that improved Plaintiff's symptoms. The Court accepts these as additional reasons provided by the ALJ. "Even when an agency explains its decision with less than ideal clarity, [the reviewing court] must uphold it if the agency's path may reasonably be discerned." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (quotation marks omitted).

#### a. Activities of Daily Living

The ALJ discounted Plaintiff's symptom testimony in part because his activities of daily living were inconsistent with his attested limitations. AR 23-26. Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina*, 674 F.3d at 1112-13; *Orn*, 495 F.3d at 639. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is

insufficient to discount subjective symptom testimony. *See Molina*, 674 F.3d at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

      Plaintiff stated in his function report that he "cannot feel feet or fingers" due to diabetic neuropathy, which affects his ability to drive. AR 242. He further stated that he cannot do work that requires the use of his hands due to "the loss of feeling in fingers like picking things up or putting things together." *Id*. Plaintiff testified at the hearing that his neuropathy symptoms first manifested after his diabetes diagnosis in 2017. According to Plaintiff, he "didn't have the numbness as bad" in 2017 but he "had to slow down on [his] driving" in 2018 because he could not "feel [his] feet for the pedals." AR 49. He testified that his "fingers started going numb" in 2018, and that now he cannot "grab things and hold them." Plaintiff stated that numbness in his

feet "started with the toes, then it moved to like the heel" in 2018. Now, Plaintiff asserts, he is numb "almost above [his] knee[s]." AR 50. He testified that he had trouble standing in 2018, and frequently had to sit in a reclining position. AR 51.

The ALJ discounted Plaintiff's testimony because, among other things, in October 2019 he stated he was able to "attend to personal care" and "admitted that he is able to do laundry, clean up after himself, drive a car, and shop in stores." AR 26 (citing AR 242, 244-45). The ALJ reasoned that these activities are inconsistent with Plaintiff's contemporaneous alleged inability to "feel anything with his hands and feet." *Id*. Plaintiff stated in his October 2019 function report that he is unable to feel his feet or fingers. AR 242. The ALJ did not err in determining this testimony was inconsistent with Plaintiff's statements in October 2019 that he could drive, do laundry, and shop in stores.

As noted above, Plaintiff's eligibility for DIB hinged on his ability to prove he was disabled within the relevant period. Plaintiff described that his neuropathy symptoms progressively got worse beginning in 2017. Plaintiff's written testimony from October 31, 2019, which the ALJ relied on, listed daily activities that were inconsistent with his symptom testimony. AR 242-249. Therefore, it was rational for the ALJ to conclude that if Plaintiff could perform these inconsistent activities in October 2019, he also could perform them during the relevant period, when his symptoms would have been better. Thus, Plaintiff's daily activities during the relevant period were inconsistent with his claimed limitations. So long as the ALJ's interpretation is rational, even assuming Plaintiff offers a competing rational interpretation, the Court affirms the ALJ's interpretation. *Burch*, 400 F.3d at 680-81. Thus, the ALJ did not err in concluding that Plaintiff's daily activities conflicted with his symptom testimony and this is a clear and convincing reason to discount his subjective symptom testimony.

PAGE 10 – OPINION AND ORDER

### b. Conservative treatment and improvement with treatment

The ALJ discounted Plaintiff's symptom testimony because he received treatment that is conservative and that is "not consistent with disabling symptoms." AR 216. Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Additionally, a claimant's improvement with treatment "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 404.1529(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability.").

The ALJ determined that Plaintiff's treatment for diabetes-related impairments was largely conservative in nature. AR 24-26. Additionally, the ALJ found that many of Plaintiff's symptoms were effectively controlled with treatment and supportive lifestyle changes. AR 24. To support this conclusion, the ALJ pointed to records showing Plaintiff's diabetic retinopathy

PAGE 11 – OPINION AND ORDER

was treated with topical medications, and on follow up, Plaintiff was "recovering quite nicely." *Id.* (citing AR 598). The ALJ noted that Plaintiff's diabetic nephropathy was "treated conservatively" with medications in May 2018, and resulted in no evidence of "kidney dysfunction, chronic kidney disease, or renal complications" within the record. *Id.* Regarding Plaintiff's peripheral neuropathy, the ALJ described the relatively benign findings in October 2019 of Dean Nakadate DPM, a podiatrist. AR 24-25 (citing AR 433-34). The ALJ also explained that Dr. Nakadate prescribed orthopedic shoes and requested an annual follow up, which is inconsistent with a disabling condition. *Id.* (citing AR 434). Further, the ALJ recited the relatively mild findings from Plaintiff's treating neurologist, Craigan Griffin, MD, who described the "patchy nature of [Plaintiff's] symptoms" as "typical of diabetes." AR 25 (citing AR 467). Dr. Griffin also explained that Plaintiff had a "fairly good response" to the medication for the neuropathic pain. *Id.* (citing AR 467). Moreover, the ALJ pointed out that "the record does not contain evidence of treatment recommendations that are not conservative in nature." AR 26. Thus, as the ALJ noted, Plaintiff's symptoms were largely treated with medication management and prescription shoes and insoles. AR 24-25.

      Plaintiff argues that the ALJ erred in relying on conservative treatment to discount symptoms of diabetes-related peripheral neuropathy because the disease is incurable and the only treatment available for peripheral neuropathy is conservative in nature. Additionally, Plaintiff argues that records from both his treating physician, Ellen Meyers, MD, and Dr. Griffin, substantiate his claim that peripheral neuropathy would interfere with his ability to work. The Court finds Plaintiff's arguments unpersuasive for several reasons.

      First, although peripheral neuropathy is not curable, substantial evidence supports the ALJ's conclusion that Plaintiff's symptoms were not disabling during the relevant period.

Plaintiff's records show that he was still able to take care of his father, drive, and go to the store. AR 48, 49, 440, 443, 450, 453. Second, Plaintiff received care that was largely conservative and routine, consisting of medication management and prescription shoes and inserts. He was not prescribed any assistive devices such as a cane or walker, nor was he assigned any functional limitations by any medical provider. Finally, while Drs. Meyers and Griffin opined that Plaintiff should no longer work with heavy equipment, and therefore may consider disability, there is no supporting statement that during the relevant period Plaintiff could not perform other work, such as jobs available with the restrictions provided in the RFC. Indeed, many of the records Plaintiff cites to support his claim take place after the relevant period. *See, e.g.*, AR 316, 318-19, 456, 616. Other records during the relevant period do not express limitations as great as those described by Plaintiff. For example, records from February 2018 state diabetic neuropathy in his feet is "mostly at night" and neuropathy in hands has improved. AR 388. As such, the ALJ did not err in citing conservative, routine, and effective medical treatment in discounting Plaintiff's symptom testimony.

### c. Objective Medical Evidence

The ALJ discounted Plaintiff's symptom testimony in part because "medical findings do not support the extent of limitation alleged." AR 24; *see also* AR 26 (stating that the "clinical evidence and diagnostic findings do not substantiate disabling limitations with respect to ability to sit, stand, walk, and use his extremities"). An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins*, 466 F.3d at 883;

20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2), (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The ALJ described many medical records that do not support Plaintiff's alleged limitations. AR 24-26. For example, the ALJ pointed out that although objective medical testing from October 2019 showed "decreased range of motion in the ankle joints, bilateral ankle edema, neurologic loss of protective threshold, diminished proprioception, and diminished vibratory sensation with no open ulcerations or erythema and abnormal monofilament exam of the bilateral feet," Plaintiff retained "4/5 muscle strength in all quadrants" and he had "no pain to palpitation," and "no open ulcerations or erythema." AR 24 (citing AR 433-34). Additionally, the ALJ noted that "electrodiagnostic testing of January 2020 compared to October 2018 showed 'a fairly stable pattern of mild to moderate sensory and motor peripheral neuropathy' with no evidence of myopathy of radiculopathy process." AR 25 (quoting AR 467). Plaintiff had "no motor abnormality, normal stance and gait, and he was able to tandem walk and walk on his heels and toes." AR 25 (citing AR 442, 470).

Plaintiff argues that the ALJ focused on parts of the record showing improvement, while ignoring worsening symptoms. This argument, however, is unsupported as the ALJ relied on records containing both improvement and decline throughout the decision, and the RFC reflects those limitations identified by the ALJ. *See, e.g.*, AR 24 (citing AR 314, 327, 407, 433-34). As such, the ALJ did not err in concluding that the objective medical evidence does not support Plaintiff's claimed limitations and relying on this as a relevant factor in discounting Plaintiff's subjective testimony.

## B. Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment and "must give reasons that are germane to each witness." *Id.* (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In rejecting lay testimony, however, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle*, 533 F.3d at 1162-63). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117.

The Commissioner argues that under new regulations governing the evaluation of *medical* evidence, an ALJ need not provide any reason for rejecting *lay* witness statements. Subsection (d) of the new regulations provides: "We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." 20 C.F.R. § 404.1520c(d). Subsections (a) through (c) lay out the new standards for

PAGE 15 – OPINION AND ORDER

evaluating medical opinion evidence. *Id.* § 404.1520c(a)-(c). Thus, under the new regulations, the ALJ is not required to use the standards for evaluating medical opinion evidence when evaluating lay witness testimony.

The Ninth Circuit has not yet decided whether the new regulations affect the requirement in the Ninth Circuit that an ALJ must give germane reasons for rejecting lay witness testimony. Some courts have concluded that the new regulations may dispense with an ALJ's obligation specifically to address lay witness testimony, including any obligation to articulate germane reasons for disregarding lay testimony. *See, e.g.*, *Evans v. Comm'r of Soc. Sec.*, 2023 WL 3570083, at *9 (E.D. Cal. May 19, 2023) ("Under the new regulations regarding nonmedical statements, the Commissioner is no longer required to articulate 'germane' reasons for discounting a lay witness's testimony.").[3] The majority of district courts in this circuit, however, conclude that the new regulations have not eliminated an ALJ's obligation to consider and address lay witness testimony. *See, e.g.*, *Christopher M. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 8827678, at *10 (D. Or. Dec. 21, 2023); *Jerald H. v. Comm'r of Soc. Sec.*, 2023 WL 6533477, at *4 (W.D. Wash. Oct. 6, 2023); *Gardner v. Comm'r of Soc. Sec. Admin.*, 2023 WL 6173220, at *6 (D. Ariz. Sept. 21, 2023); *Joseph L. S. v. Kijakazi*, 2023 WL 5611408, at *5 (C.D. Cal. Aug. 30, 2023); *Sharon W. v. Kijakazi*, 2023 WL 246391, at *8 (D. Idaho Jan. 18, 2023).

---

[3] The Commissioner relies on a footnote in *Fryer v. Kijakazi*, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022) (unpub) ("Fryer also argued that the ALJ erred by refusing to consider lay witness statements from her husband. It is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear they are no longer required to articulate it in their decisions."). This Court does not rely on unpublished dispositions of the Ninth Circuit.

PAGE 16 – OPINION AND ORDER

On the Court's reading, the new regulations do not eliminate an ALJ's obligation to consider and address lay witness testimony. The revised regulations describe how to evaluate *medical* opinion testimony. The fact that the regulations state that nonmedical opinion testimony *is not held* to the same standard as medical opinion testimony says nothing about the standard to which nonmedical opinion testimony *is held*. Thus, the new regulations are not "clearly irreconcilable" with existing caselaw and are insufficient to overrule binding Ninth Circuit precedent that an ALJ must comment on lay witness testimony and provide germane reasons to discount it. *See Woods v. Kijakazi*, 32 F.4th 785, 790 (9th Cir. 2022) ("[Ninth Circuit] precedent controls unless its reasoning or theory is clearly irreconcilable with the reasoning or theory of intervening higher authority, which in this case is the agency's updated regulations." (cleaned up)). Further, "[t]he requirement that an ALJ consider lay witness testimony comes from other regulations, regulations that remain intact after the 2017 amendment." *Joseph L.S.*, 2023 WL 5611408, at *5. (citing 20 C.F.R. §§ 416.913(a), 416.929(a)).[4] The Ninth Circuit's requirement from the line of cases described above that an ALJ must provide germane reasons to discount lay witness testimony finds support in this regulatory requirement, which still remains. *See, e.g.*, *Dodrill*, 12 F.3d at 918-19 ("Disregard of [lay witness testimony] violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. § 404.1513(e)(2)." (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).[5] Thus, the contention "[t]hat an ALJ can

---

[4] The court in *Joseph L.S.* cited the regulatory provisions applicable to Title XVI claims—the same regulatory provisions applicable to Title II claims are in 20 C.F.R. §§ 404.1513, 404.1529.

[5] The requirement that the Commissioner consider nonmedical evidence in adjudicating Title II claims is now in 20 C.F.R. § 404.1513(a)(4).

disregard or reject relevant lay evidence for no reason is inconsistent with the Commissioner's obligation to consider such evidence[] and the rule [that] the ALJ must provide some rationale in order for the Court to meaningfully determine whether the ALJ's conclusions are free of legal error and supported by substantial evidence." *Gary J.D. v. Comm'r of Soc. Sec.*, 2023 WL 5346621, at *14 (W.D. Wash. Aug. 21, 2023).

Plaintiff's girlfriend submitted written testimony in support of his disability application that described Plaintiff's symptoms, activities of daily living, and behaviors. AR 300-08. The ALJ stated that the lay witness statements were considered when determining Plaintiff's RFC, but that the ALJ considered the statements "neither inherently valuable nor persuasive when compared to the objective medical evidence." AR 26. This reason is not sufficient to satisfy the germane reasons requirement, and as such, the ALJ erred. *See Deidrich*, 874 F.3d at 640 (a lack of supportive medical evidence is not a proper basis for disregarding lay witness testimony). The lay testimony, however, described the same limitations as did Plaintiff's testimony. Thus, the error is harmless because the Court upheld the ALJ's discounting of Plaintiff's testimony, and those same reasons would apply to discount the lay witness testimony. *Molina*, 674 F.3d at 1117.

## C.  Step Five Error

Plaintiff argues that the ALJ's step five finding is erroneous because the dispositive hypothetical question posed to the VE did not account for all of Plaintiff's limitations. This argument fails because the ALJ properly evaluated Plaintiff's symptom allegations, the medical evidence and other evidence in the record in formulating the RFC. Thus, the hypothetical posed to the VE incorporated all of Plaintiff's limitations. A hypothetical posed to the VE must be complete and "include all of the claimant's functional limitations, both physical and mental." *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect all the claimant's

limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." (quotation marks omitted)). Thus, the ALJ did not err in relying on the VE testimony that, during the relevant period, there were significant jobs in the economy that Plaintiff could perform.

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled until December 27, 2019.

**IT IS SO ORDERED**.

DATED this 10th day of April, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge